70 F.3d 1275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Callie M. STURDIVANT, Plaintiff-Appellant.
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 95-2137.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 14, 1995.
Decided Nov. 27, 1995.
 
 Before CUMMINGS, BAUER and ESCHBACH, Circuit Judges.
 
 ORDER
 
 1
 Callie Sturdivant applied for Disability Insurance Benefits under the Social Security Act (42 U.S.C. Secs. 416(i), 423(d)) on January 25, 1991. Sturdivant was eligible for benefits for the period from November 24, 1981, the onset date of her alleged disability, through March 31, 1986, where her disability insurance status expired. Her application was denied initially and on reconsideration. Pursuant to Sturdivant's request, she received a hearing before an Administrative Law Judge. The ALJ denied disability benefits, determining that Sturdivant did not have any severe impairment, but the Appeals Council disagreed and remanded the case. Sturdivant then received a supplemental hearing before the ALJ. The ALJ once again denied disability benefits, finding that Sturdivant did not meet the listing for obesity, and also that she retained the residual functional capacity to perform a range of medium work. The Appeals Council denied review.
 
 
 2
 Sturdivant timely filed a complaint in district court, requesting judicial review under 42 U.S.C. Sec. 405(g). Both sides moved for summary judgment. Magistrate Judge Robert F. Kaufman issued a report and recommendation for affirmance of the Commissioner's decision. Sturdivant filed objections to the report and recommendation. Judge McDade then adopted the Magistrate's report and recommendation, with comments added. Sturdivant timely appealed from the district court's judgment.
 
 
 3
 Our review is limited to determining whether the decision of the Commissioner is supported by substantial evidence and whether the proper legal standards were applied. 42 U.S.C. Sec. 405(g); Pitts v. Sullivan, 923 F.2d 561, 564 (7th Cir.1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation omitted).
 
 
 4
 Sturdivant's first argument is that the ALJ failed to order an expert physician, under 20 C.F.R. Secs. 404.1526 and 416.926, to make an assessment of Sturdivant's medical equivalence to specified impairments based on Sturdivant's complete file. Sturdivant sought to meet the two components of the impairment in Listing 9.09 (formerly Listing 10.10):
 
 
 5
 Weight equal to or greater than the values specified in ... Table II for females [266 pounds for a female with a height of 65 inches], and one of the following: A. History of pain and limitation of motion in any weight-bearing joint or the lumbosacral spine (on physical examination), associated with findings on medically acceptable imaging techniques of arthritis in the affected joint or lumbosacral spine; or B. Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff....
 
 
 6
 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 9.09 and Table II. Two physicians designated by the Commissioner did evaluate Sturdivant's medical file, but made their findings months before a series of Sturdivant's medical reports, labeled Exhibit 20, was put in Sturdivant's file. The ALJ did not obtain another evaluation after Exhibit 20 was in the file.[1] According to Sturdivant, had the ALJ received an expert medical evaluation--or considered the file properly--he would have seen that Sturdivant clearly met Listing 9.09.
 
 
 7
 We agree with the district court that Sturdivant's case falls under Pope v. Shalala, 998 F.2d 473, 481 (7th Cir.1993), and Scott v. Sullivan, 898 F.2d 519, 522-24 (7th Cir.1990). In Pope and Scott, as in Sturdivant's case, a physician designated by the Commissioner determined that the claimant did not equal the disability listings. Pope at 481, Scott at 524. In Pope and Scott, the physician's determination was completed before the hearing; and in both cases, we held that the ALJ was entitled to rely on the determination, given that the claimant failed to introduce evidence contradicting it. Pope at 481, Scott at 523-24. Sturdivant's case is somewhat different from Pope and Scott, in that neither physician's determination was based on medical evidence of Sturdivant's condition from 1981 to 1986: one was based solely on the lack of pre-1990 medical evidence, R. 8 at 152-59, and the other was based solely on the records beginning in 1990, R. 8 at 162-69. However, this difference does not help Sturdivant, if the 1981 to 1986 records do not contain some evidence of a disability. See Pope at 481 & n. 7 (claimant "failed to introduce any evidence contradicting this equivalency determination"; "[t]here is nothing in the record which indicates that the earlier equivalency opinion was erroneous").
 
 
 8
 The question in Sturdivant's case, then, is whether Exhibit 20 contains some evidence of a disability meeting Listing 9.09.[2] It does not. Sturdivant points to only one instance in Exhibit 20 where her weight exceeded the minimum of 266 pounds for Listing 9.09: 273- 1/2 pounds on November 8, 1984. Exhibit 20 indicates that Sturdivant also weighed 266 pounds or more on three occasions from May to December 1984. R. 8 at 433, 434, 436, 437. However, Exhibit 20 does not show any other weights of 266 pounds or more. Accordingly Exhibit 20 fails to constitute evidence that Sturdivant's weight met Listing 9.09 for the 12-month minimum required by 42 U.S.C. Sec. 423(d)(1)(A) and 20 C.F.R. Sec. 404.1505(a).[3]
 
 
 9
 Sturdivant's second argument is that she could not perform medium work. The regulations define medium work as "involv[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. Sec. 404.1567(c). Sturdivant asserts that the ALJ and district court could not reasonably conclude that an obese woman with peripheral neuropathy, as shown by Exhibit 20, could do medium work.[4]
 
 
 10
 However, there is substantial evidence that Sturdivant could perform medium work. First of all, Sturdivant testified at her first hearing about her unimpaired activity in 1986. R. 8 at 54-56. Sturdivant's daughter did testify at the second hearing about Sturdivant's difficulties with her activities from 1984 to 1986. R. 8 at 86-95. We must defer, though, to the credibility determinations of the ALJ, unless they are "patently wrong." Kelley v. Sullivan, 890 F.2d 961, 965 (7th Cir.1989). It was clearly not "patently wrong" for the ALJ to determine that the testimony of Sturdivant's daughter was not credible, given Sturdivant's contrary testimony in her original hearing.
 
 
 11
 As to the years prior to 1986, in late 1982 Sturdivant complained of frequent numbness and tingling in her fingers, lower legs, and feet, and pain in her feet, which she claimed had been a problem for several years, and was diagnosed with peripheral neuropathy. R. 8 at 461, 464-65, 466-67, 477, 479. However, Sturdivant "had not noted any definite weakness in the lower extremities," though she had "had some problems falling when walking up the steps." Id. at 464. Her symptoms of neuropathy subsided at the end of her hospital stay in late December 1982. Id. at 461. The record after that point through the end of the claimed period shows no reports or diagnoses of neurological or other problems with her hands, legs, or feet. Id. at 411-59. Furthermore, as interpreted by the ALJ, and not contradicted by Sturdivant, her May 25, 1983 neurological examination showed Sturdivant "within normal limits, including the deep tendon reflexes." Id. at 16, 442. The lack of "definite weakness" before December 1982, and the lack of neurological problems after December 1982, constitute substantial evidence that Sturdivant has not shown a problem that would prevent the lifting involved in medium work.
 
 
 12
 Sturdivant's third argument is that the ALJ rejected her claim because she failed to follow a prescribed course of treatment. See 20 C.F.R. Sec. 404.1530. According to Sturdivant, there is no evidence that a course of treatment was prescribed that she failed to follow, or that she had the financial resources to follow such a treatment. Regardless of the truth of Sturdivant's assertions, the government cannot lose in this argument. As described above, there is substantial evidence that, even when Sturdivant was not following a treatment, she was not disabled and was able to work. Thus, Sturdivant was properly denied disability benefits.
 
 
 13
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Sturdivant asserts in her brief that she requested a physician's evaluation of her file subsequent to the filing of Exhibit 20. Without citation of authority, Sturdivant contends that the ALJ's refusal to procure a medical advisor "particularly when requested by Claimant's counsel" violates due process of law. There are two problems with this argument. First, the government seems to be correct that Sturdivant did not request a physician evaluation until her appeal of the ALJ's second ruling. Second, Sturdivant leaves it to us to construct an argument from her self-serving, conclusory assertion of a due process violation
 
 
 [2]
 Sturdivant does not suggest that we should examine the other exhibit concerning the November 1981 to March 1986 period (R. 8 at 523-25)
 
 
 [3]
 Sturdivant did not meet the other required component of Listing 9.09 either. Sturdivant relies on one period in December 1982 where doctors found evidence of neuropathy, and well as general evidence in the record of diabetes and incontinence, to show that she met Listing 9.09A. However, Sturdivant nowhere contends that neuropathy, diabetes, or incontinence are the same thing as, or somehow imply, arthritis, which is clearly the only malady that may be proven in order to meet Listing 9.09A. As for Listing 9.09B, there are only three diastolic blood pressure readings of 100 in the entire record for the claimed period, R. 8 at 418, 428, 433-434, while there are many readings under 100, including ones taken on dates shortly after each of the higher readings
 
 
 [4]
 Sturdivant bases this argument partially on the fact that she is 58 years old. The government responds correctly that Sturdivant was 46 to 51 years old from 1981 to 1986, the claimed period. See, e.g., R. 8 at 110 (Sturdivant's birth date was January 21, 1935)